circumstances it is of no importance that a formal agreement to live together as husband and wife was not entered into, or that either did not know that the impediment to such an agreement had been removed, when, in fact, it had been so removed, and both parties were competent to enter into the matrimonial state; that under the laws of this state and of every other state in which Arthur Wells and Emma Wells resided a common-law marriage took place when the former wife of Arthur Wells died and they proclaimed themselves to the world, as they did day by day, to be man and wife, held themselves out as such, were recognized as such, not only by relatives and friends, but by all the world as well; that such holding out and recognition by them constituted an absolute agreement that they were thus man and wife, and that they had consented and agreed to live in such relation; that Arthur Wells, if living, would not have been heard to deny such relation; that the respondent, the heirs or next of kin of the deceased, are not in position to deny under the circumstances that they were husband and wife.

It follows that the decree of the Surrogate's Court appealed from should be reversed, with costs to the appellant.

Decree of Surrogate's Court reversed, with costs to appellant. All concur, except ROBSON, J., who dissents.

---

GAFFNEY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

RAILROADS—ACCIDENTS AT CROSSINGS—ACTIONS — EVIDENCE — SUFFICIENCY — CONTRIBUTORY NEGLIGENCE.

In an action for causing the death of plaintiff's intestate at a crossing, it appeared from the evidence for plaintiff that before attempting to cross the track the decedent looked both ways for a train, and a witness who was about ten feet behind him also looked and saw a train approaching. It was a freight train, drawn by an engine running backwards, and was moving at the rate of three or four miles an hour. The witness saw the decedent walk in front of the train, but did not see him hit. Another witness said he did not see the decedent while crossing, but saw him hit as he was leaving the walk. There was an electric street light at the crossing, and other lights in the vicinity. The train was a heavy train of 38 cars, 30 of them being loaded. It was plainly visible, and the engine carried a light at each end. *Held*, that the intestate was negligent, and there could be no recovery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1138–1150.]

Appeal from Trial Term, Westchester County.

Action by Hugh F. Gaffney, administrator, etc., of Edward Gaffney, deceased, against the New York Central & Hudson River Railroad Company, for causing the death of plaintiff's intestate at a crossing. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, MILLER, and GAYNOR, JJ.

John F. Brennan, for appellant.
Thomas J. O'Neill (Nelson L. Keach, on the brief), for respondent.

GAYNOR, J. This case should have been dismissed. The testimony of the young man who was out walking with the deceased at the time he was killed is that they were crossing Eleventh avenue from east to west at the north crossing of Fifty-Fourth street in Manhattan borough at about 9 o'clock at night in August; that the deceased walked about 10 feet ahead of him; that he saw the deceased looking both ways for a train; that he (the witness) also looked and saw the train coming from the south; that it was a heavy freight train (afterwards shown to be of 38 cars, 30 of them loaded) being drawn by an engine running backwards; that it was going only about as fast as a person walks, 3 or 4 miles an hour—and this was corroborated by all of the witnesses on both sides; that he waited for it to pass; that he saw the deceased continue on and walk in front of it, but did not see him get hit, although he was looking at him all the while; that he only knew he was hit after the train stopped (as it did immediately in two car lengths or less) and he went to the other side of it. There was an electric street light at the crossing, and other lights in the vicinity in stores, and he had no difficulty in seeing the train; it was plainly visible and had a light at the head of it, viz., on the rear of the tender. Another witness, who was on the other side of the street, at the same crossing, testified that he did not see the deceased crossing, but saw him get hit as he was leaving the track; he did not see him until he saw him getting hit. He does not say that he was in front of the train, or what hit him. This is the evidence for the plaintiff on which the verdict rests. Assuming that it is truthful, the case is plainly one of contributory negligence. Not only was it impossible for the deceased to have failed to see the train, but the well known noise of a steam engine laboring to pull such a train so slowly, to say nothing of the noise of the cars, must have been heard by him.

Two witnesses called by the defendant testified that they saw the deceased on the top of the first car going toward the rear of the train, and in jumping to the second car he fell to the ground and was run over. The engineer and fireman testified that he was not hit by the front of the train. The verdict was contrary to the weight of evidence.

The dispute as to whether the bell was ringing, and as to the size of the light on the rear or tender of the engine (it not being disputed that there was a light there), need not be taken into account, for the negligence of the deceased is manifest if the testimony for the plaintiff on these heads was to be given credence. The engine, according to the testimony for the defendant, was one which was run both forward and backward, and had a headlight on both the front and the rear.

The judgment should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.